WILLIAM METZGER ET AL., EXECUTORS, *vs.*
ALFRED KLANKO.

Third Judicial District, New Haven, January Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and WOLFE, Js.

The plaintiff, as executor of the will of one dying in July, 1912, together with coexecutors who subsequently resigned or died, executed in October, 1912, a lease of certain premises to the defendant, and therein agreed to sell him, and he agreed to buy, all the ale and beer which he should use in his retail liquor business. In an action for the rent due, the defendant claimed that the entire agreement was illegal, on the ground that though the plaintiff's testator had been duly licensed prior to his death to sell such liquors at wholesale, the executors were not so licensed at the time of making the lease. The statute then in force (Public Acts of 1911, Chap. 39) provided for the transfer of the license, in case of death of a licensee, to any other suitable person upon due application and approval by the county commissioners as in case of an original application, and that pending the transfer the decedent's business might be continued until the matter of the trans-

fer was determined. *Held* that as no time was stated within which application must be made, the executors, even though they had not made application for the transfer, were lawfully continuing the business at the time of making the lease.

The defendant also contended that the plaintiffs had not been properly licensed during the several years within which the agreement to sell ale and beer had been carried out. It appeared that the plaintiff, as the active executor, made application and furnished bond for a license each year, and that each year a license had been issued either in the plaintiff's name, or in the name of the estate, or in a trade name formerly used by the deceased. *Held* that inasmuch as the license in each case was applied for, granted, and intended to authorize the executors to continue the same business, any unimportant irregularity in the application, bond, or form of the licenses, was not sufficient to render them void.

Since this was an action to collect a debt due upon a contract fully performed by both parties, except for the payment claimed, it was no defense that the Court of Probate had passed no order authorizing the executors to continue the business, and hence that the contract, while executory, might not have been enforceable against the estate.

Whether the agreement to pay the rent was distinct and severable from the agreement to buy ale and beer, *quære.*

Argued January 23d—decided April 18th, 1923.

ACTION to recover upon a written contract involving the sale and purchase of ale, lager beer and porter, brought to and tried by the Superior Court in New Haven County, *Keeler, J.;* facts found and judgment rendered for the plaintiffs for $3,499, and appeal by the defendant. *No error.*

*Robert L. Munger,* for the appellant (defendant).

*Patrick B. O'Sullivan,* with whom, on the brief, was *William F. Healey,* for the appellees (plaintiffs).

BURPEE, J. The complaint alleges that the plaintiff, on October 23d, 1912, acting with other executors of the will of Herman Metzger who subsequently resigned or died, by writing leased certain property to the

defendant, for the rent of $2,500, payable $40, with interest, on the first of each month until the full amount had been paid; and that the defendant, in consideration of this lease, agreed to rent the described property and to pay the rent of $2,500, with interest, in the manner set forth; that the defendant had made default in these payments, and that $3,325 was due to the plaintiff, which the defendant on demand had refused to pay.

The answer admits these allegations, and also sets up as a special defense that Herman Metzger, of whose will the plaintiff and his associates were executors, before and at the time of his death had been engaged in the manufacture and wholesale distribution of ale and beer, under a license issued to him according to the laws of this State; that Herman Metzger died on July 13th, 1912; that at the time the lease was made, October 23d, 1912, his license had not been transferred to the plaintiff as executor of his will; that by the terms of the lease, as appears therein, the plaintiff and his former coexecutors agreed to sell to the defendant all the ale and beer which he should use in his retail liquor business; and that neither the plaintiff nor any of the other then executors of Herman Metzger's will had any license to sell ale and beer. In reply the plaintiffs denied only that he and his coexecutors agreed by the terms of the lease to sell ale and beer to the defendant.

In a second defense the defendant set up that he agreed, as a part of the agreement annexed to the complaint, to purchase ale and beer from the plaintiffs, and did so until January 16th, 1920, when the United States prohibition laws took effect. Notwithstanding the denial of this allegation, the trial court has found that such is the fact. Nevertheless, it rendered judgment for the plaintiffs to recover $3,325, which is the full amount of unpaid rent admitted to be due at the time

of the filing of the complaint, with interest to the date of judgment.

In his appeal the defendant contends that the plaintiffs, as executors of the will of Herman Metzger, could not lawfully enter into either the agreement to lease or the agreement to sell ale and beer, and could not lawfully sell ale and beer, because at that time they were carrying on their testator's business of selling ale and beer without having obtained a transfer of his license to any of them, and while no application to transfer his license was pending, and without a license issued to any of themselves, and without authority of the Court of Probate.

In considering this contention, it should not be overlooked that this suit was brought only to recover a sum of money admitted to be due as rent of property leased by the plaintiffs to the defendant.

It is conceded that the plaintiffs, when they made the agreement of October 23d, 1912, were acting as the executors of the will of a licensee who had been before his death in July, 1912, conducting the business of selling ale and beer. Under our statute then in force they might, with the consent of the county commissioners, transfer his license either to one of themselves, as the representative of the estate of the deceased, or to any other person found suitable in the judgment of the commissioners. But this transfer could be made only after the person to whom the license was to be transferred had made an application and procured such a recommendation and executed such a bond as was required of the person to whom this license was originally granted. "Pending the transfer," the business of a deceased licensee might be continued by his executors "until the matter of said transfer is determined." No time was limited by this statute within which the application to transfer should be made and the other

proceedings be begun and completed. The entire process would necessarily require considerable time; but however long such time might be, the business might be carried on until the commissioners had finally decided concerning the transfer. Public Acts of 1911, Chap. 39, p. 1293. Not until 1915 was a limit put on the time within which an application to transfer should be made and during which the business might be continued by the executor, and then it was fixed at thirty days after the death of the original licensee "or until the application to transfer such license has been disposed of." Public Acts of 1915, Chap. 148, p. 1990. While the words "pending the transfer" in both statutes indicate the intention that an application to transfer should be made, it would seem that the permission to continue the business took effect on the death of the licensee and was not terminated until the matter of transfer had been disposed of; and since, under the statute in force in 1912, it was not required that an application to transfer be made within a specified time after the death of a licensee, it cannot be said that the plaintiffs, although they had not taken any steps to obtain a transfer of the license of their testator, were not lawfully continuing his business when this agreement was made. Therefore the court below did not err in holding that this agreement was not for this reason illegal.

Concerning the second defense, the trial court has found that the plaintiffs continued this business and sold ale and beer to the defendant after the testator's license expired in 1912, under successive licenses, until January, 1920. Thereupon the defendant set up a claim that no valid bond was filed with the application for these licenses and that it is impossible in law to issue a license to a person's estate; and that for these reasons the plaintiffs had no license to sell intoxicating

liquors, and therefore their sale of ale and beer, after the expiration of their testator's license in 1912, was illegal. This claim was considered and overruled by the court below. We think its conclusion was correct. In our opinion, the record does not disclose any material defects in any of the applications for these licenses, or in any of the bonds given, or in any of the licenses themselves, which made any of the licenses void. It appears in the finding of facts that yearly after 1912, the active plaintiff made applications and furnished bonds for licenses to carry on the business which his testator had conducted before his death, and that these applications and bonds were approved by the county commissioners and licenses were issued thereupon. In some of these the licensee named was the estate of Herman Metzger, in some the active plaintiff personally, and in some the Derby and Ansonia Brewing Company, which was a name used by the original licensee while he carried on the business. But in each instance the license was applied for, intended, and granted, to authorize the executors to continue the same business, and they were used for that business only. No unimportant irregularity in an application, or in a bond, or in the form of a license, would make the license void.

The appellant further contends that the contract to lease the property of this estate was binding only on the plaintiffs individually, and was not enforceable against the estate, because the Court of Probate having jurisdiction had passed no order authorizing the executors to continue this business. In this suit, however, the plaintiffs are not attempting to enforce an executory contract against any person. The estate, through the executors, is undertaking to collect the sum due from a debtor of the estate by reason of the performance of the contract by both parties. Even if the debt was created under a contract or in a business not previously

authorized by an order of the Court of Probate, it is none the less a debt due to the estate which it is the duty of the executors to collect. This assignment of error has no merit.

The plaintiffs have presented a bill of exceptions, in which they claim that that part of the agreement set up in the complaint in which the defendant agreed to pay the rent stipulated in the lease of the property is distinct and severable from the part in which he agreed to buy ale and beer from the plaintiffs; and that even if the latter agreement is illegal, the plaintiff may maintain an action on the former if it be legal. This claim was overruled by the court below. The conclusions we have reached upon the defendant's appeal make it unnecessary to consider this matter.

There is no error.

In this opinion the other judges concurred.